IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21CR869 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE THOMAS M. |
| | ) | PARKER |
| | ) | |
| CHELSEA PERKINS, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | SUPPLEMENT IN SUPPORT OF BOND |

Now comes the United States of America, by and through counsel, Michelle M. Baeppler, Acting United States Attorney, and Scott Zarzycki, Margaret A. Kane, and Adam J. Joines, Assistant United States Attorneys, and hereby opposes Defendant's Supplement in Support of Bond (R. 22, PageID 153-59, hereinafter "Supplement") because Defendant has failed to rebut the presumption in favor of detention and because the nature and circumstances of the offense demonstrate that no condition or combination of conditions will reasonably assure the safety of the community or her appearance in court.

I.  **Procedural Background**

On December 8, 2021, the government filed a criminal complaint charging Defendant with Murder, in violation of 18 U.S.C. 1111(a). Defendant was arrested and taken into custody on December 9, 2021. On December 16, 2021, federal grand jury returned a three-count indictment charging Defendant with Murder in the First Degree, in violation of 18 U.S.C. §§ 7(3) and 1111(a) and (b), Murder in the Second Degree, in violation of 18 U.S.C. §§ 7(3) and 1111 (a) and (b), and Using or Carrying and Discharging a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (R. 4: Indictment, PageID 32-33).

On January 24, 2022, this court held the Initial Appearance. (Minutes of proceedings, Jan. 24, 2022). The government moved for detention and a hearing was set for February 1, 2022. (*Id.*)

On February 1, 2022, this court held the detention hearing. In arguing that no condition could reasonably assure the safety of the community, the government introduced the testimony of FBI Special Agent Gregory Craig and a series of fourteen exhibits. SA Craig's testimony and the accompanying exhibits detail the nature and circumstances of the offenses charged. The evidence included proof of premeditation by Defendant before she committed the alleged murder and a description of how the victim was killed with a firearm. The government also proffered the pretrial services report and affidavit in support of the criminal complaint originally filed in this matter. (Minutes of proceedings, Feb. 1, 2022). The government also argued that no condition would reasonably assure the appearance of the defendant in court. The Defense proffered information about Defendant's family ties and a place to stay in Florida if released on bond. (Id.). Defense requested additional time to investigate family ties in the state of Ohio, and the court granted counsel a continuance on the proceeding until February 15, 2022 to submit additional information. The court held the issue of detention in abeyance pending this investigation.

On February 15, 2022, the defense filed its Supplement in Support of Bond. (R. 22: Supplement, PageID 153-59).

## II.    Law and Argument

A court must order a defendant detained if no condition will reasonably assure her appearance at trial or if there is a serious risk to the safety of others or the community. 18 U.S.C.

§ 3142(e). A finding that that no conditions will reasonably assure the safety of another person or the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f).

The factors that are to be considered regarding detention are outlined in 18 U.S.C. § 3142(g):

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including--
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

**Presumption in favor of detention.**

The Supplement mischaracterizes the law on presumption, which in this case supports detention of Defendant pending trial. The Supplement begins with the caption that "liberty is the norm, not detention." In support of this point, Defendant directs the court to a quote from *United States v. Stone*, 608, F.3d 939, 945 (6th Cir. 2010), which states in part that "[t]he default position of the law…is that a defendant should be released pending trial." While that is true in many cases, Defendant ignores the language more applicable to this case in the following paragraph of the *Stone* decision (though it is acknowledged later) that states "that default is modified, however, for certain, particularly dangerous defendants. Specifically, when a 'judicial officer finds that there is probable cause to believe' that a defendant committed one of the crimes listed in section 3142(e)(3)." *Id.* In *United States v. Salerno*, 481 U.S. 739, 712 (1987) (another case cited in the Supplement), the Supreme Court noted that the respondent, in arguing that the Bail Reform Act violated the Excessive Bail Clause, conceded that the right to bail is not absolute as a court may refuse bail in some cases, in particular capital cases. *Id.*

In this case, the United States has shown that Defendant is dangerous. During the detention hearing, it presented testimony and exhibits that show that Defendant purposely discharged a firearm during a crime of violence in violation of 924(c)(1)(A)(iii). That not only is a crime listed in § 3142(e)(3), but Defendant's action resulted in a person's death. There is no question that the presumption for this situation is detention.

Even if the United States presented no evidence at the detention hearing, the presumption still applies. *United States v. Stone* goes on to say that "subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.] 18 U.S.C. § 3142(e)(3)." *Stone,* 608 F.3d at 945. A grand jury indictment, by itself, establishes probable cause to believe

that a defendant committed the crime with which he is charged. *Id.,* citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). Thus, when the government presents an indictment including charges listed in section 3142(e)(3), it has fulfilled its burden to establish the presumption in favor of detention.

**Defendant has the burden of production to rebut the presumption for detention.**

Defendant claims that she has rebutted the presumption with evidence that she does not pose a danger to the community. But the Supplement offers no evidence to support her claim. At best, the Supplement only references the court's inquiry regarding what steps the government took to keep the defendant in custody or otherwise protect the community since March 2021. (R. 22: Supp. Motion, PageID 155-56). This is not evidence of anything, let alone that a defendant accused of murder with a firearm does not pose a threat to the public if released. Even if it did, Defendant claims that that line of questioning alone rebuts the presumption of dangerousness because it outweighs the evidence that she planned a murder, traveled across multiple states to carry it out, lured a victim into the woods, and executed him with a close-range gunshot to the back of the head.

The delay in the United States' arrest of Defendant is not sufficient to show a lack of danger. Once the government had the evidence to formally charge Defendant with murder, she was arrested the following day. Federal agents traveled from Ohio to Florida to arrest her as soon as she was charged. The delay from March 30, 2021, when Defendant's residence and vehicle were searched, to her arrest in December 2021 is due to case development and investigation. The government would not, and cannot, arrest someone simply because it believes she is a danger if it does not believe there is probable cause to charge her with a crime. Defendant seems to suggest that if there is probable cause to suspect that evidence of a criminal

5

offense may be present in a person's home or car, or if the government suspects that a defendant may be involved in a crime in some way, that it automatically means there is probable cause to charge that person with a crime. Defendant's argument would penalize the government for collecting and reviewing all available evidence before charging someone with a serious crime. That is not how the criminal justice system works. The standard for charging someone with a crime is whether probable cause exists, not whether that person is dangerous.

Defendant argues that the government "failed to produce evidence that she manifested a threat any person or the community." (*Id.*, PageID 156). However, it is the Defendant who has the burden of production. Defendant presented no evidence to rebut the presumption that no condition or combination of conditions will reasonably assure the safety of a person as required and the safety of the community. Defendant's brief cross-examination of SA Craig focused primarily upon identification of Ms. Perkins in a photo line-up, the partial return of John Perkins' firearms, and whether the FBI obtained the content of Facebook messages between Defendant and the victim. (R. 18: Transcripts, PageID 131-32). When asked if the defense wished to submit evidence or make any proffers, defense counsel merely proffered that Ms. Perkins' cousin was willing to welcome Defendant back at her house and that they have sufficient funds to arrange for her appearance in released to and out-of-state house. (*Id.*, PageID 132-33). This evidence of Defendant's cousin's willingness to offer an alternative place to stay has little to no bearing on Defendant's danger to the community. As such, Defendant failed to rebut the presumption in favor of detention.

As to Defendant's claim that she has rebutted the presumption that no condition or combination of conditions will reasonably assure her appearance, Defendant points out that after finding out she was being investigated for a crime, she never fled. (*Id.*). However, being

6

suspected of a crime is quite different from being officially charged or indicted for a crime. Further, after have the opportunity to consult with counsel and appear for her arraignment, Defendant is now fully aware that the offense for which she is charged carries a possible penalty of death or spending the rest of her life in prison. Certainly, in the face of such a penalty and the evidence against her, Defendant may be tempted to flee rather than spend her life in prison. Additionally, she has few ties in the State of Ohio. A vague reference to distant relatives in the state is insufficient to rebut the circumstances that Defendant might flee if released. This factor also weighs in favor of detention.

**The nature and circumstances of the offense, not merely the language of the indictment, weigh strongly in favor of detention.**

The Supplement repeatedly asserts that in seeking detention, the government relies only on the "allegations in the indictment" (R. 22, Supp. Motion, PageID 156) or the "bare assertions" made in the indictment. (*Id.*, PageID 157). However, the government not only proffered, without objection, all information contained in the complaint affidavit, it outlined through witness testimony and multiple exhibits the facts and circumstances of this murder with a firearm. During the detention hearing, the government presented evidence that Defendant had personal issues with the victim. She accused him of rape in 2017 (R. 18: Trans., PageID 115). In message to a friend in February of 2021, she disclosed her feelings toward the victim stating, "how…does he live with himself" and "he will get his someday," to which the friend responded, "yes he will, Karma is an evil bitch." (R. 18: Trans., PageID 118-19). Four days later, Defendant reestablished contact with the victim through a Facebook message. (*Id.*, PageID 119-120). After several message exchanges, on March 5, 2021, Defendant embarked on an hours-long road trip to the Cleveland/Akron area, armed with a 9mm firearm, where she met the victim at a predetermined location. (*Id.*, PageID 101, 112). After spending the night in an Airbnb, they

7

drove together to the Cuyahoga Valley National Park. (*Id.*, PageID 103, 105-106). The Defendant packed the 9mm firearm and walked with the victim deep into the woods. (*Id.*, PageID, 109, 113-14, 130). Once they were far enough away from witnesses, Defendant placed the muzzle of the pistol against the back of the victim's head and pulled the trigger. (*Id.*, PageID 108, 109, 111, 113-14). The Defendant then left him in the woods, walked back to her car and dove to Detroit to get a tattoo. (*Id.*, PageID 112). On the way, she deleted the content of any Facebook messages with the victim, removed him from her friends list, and deactivated her Facebook account entirely. (*Id.*, PageID 126). Defendant's cell phone extraction reveals that she later drafted and deleted what appears to be a draft of a suicide note, which stated: "If you are reading this, it is too late. I'm sorry I beat you, and I raped a couple of chicks years ago. I am a shitty person and paid for my sins with blood. I've decided to leave this cruel world. Sorry I didn't warn you first." (*Id.*, PageID 127). These facts were proffered beyond the language of the indictment. They demonstrate that probable cause that Defendant is capable of committing a premeditated, callous, and violent act against another human being. This is more than a "bare bones" showing that Defendant is a danger to the community.

The government is fully aware that the "weight of the evidence" factor goes to weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt. *Stone*, 608 F.3d at 948. However, in this case there is some overlap. The facts presented at the detention hearing show that this offense was a planned, premeditated, willful, and malicious murder. They show that Defendant killed the victim to satisfy Defendant's grudge against him. These facts both go to the weight of the evidence against Defendant and the weight of the evidence of her dangerousness.

III.     Conclusion

Based on the foregoing argument, the Government requests that this Court find that there are no conditions or combination of conditions that would reasonably assure the safety of the community or her appearance in court.

Respectfully submitted,

MICHELL M. BAEPPLER
Acting United States Attorney

By: /s/ Scott Zarzycki
Scott Zarzycki (OH: 0072609)
Margaret A. Kane (OH: 0082804)
Adam J. Joines (OH: 0094021)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3971
(216) 522-7358 (facsimile)
Scott.Zarzycki@usdoj.gov
