IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE 1:21CR869 |
| | : | |
| Plaintiff, | : | |
| | : | JUDGE SOLOMON OLIVER, JR. |
| vs. | : | |
| | : | |
| CHELSEA PERKINS, | : | **DEFENDANT PERKINS'S** |
| | : | **OPPOSITION TO GOVERNMENT'S** |
| Defendant. | : | **REQUEST FOR RESTITUTION** |
| | : | |

The government seeks restitution for funeral expenses, the cost of M.D.'s family representative to attend the sentencing hearing, and lost income. (R. 216: Sent. Memo, PageID 2043-2052). Ms. Perkins agreed to pay the requested restitution for the funeral expenses and the family representative's travel. (R. 220: JE, PageID 220). Ms. Perkins objected, however, to the requested restitution for lost income. Ms. Perkins provides more details here on her objection made at sentencing.

1.   **The Government has not met its burden to establish the amount of loss of income**

The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A(b)(2)(C), authorizes restitution for "income lost by [the] victim as a result of [the] offense." The government bears the burden of proving the loss amount by a preponderance of the evidence. § 3664(e); *United States v. Kilpatrick*, 798 F.3d 365, 388 (6th Cir. 2015). Courts require that the restitution amount represent the victim's actual loss, not an estimate based on conjecture or speculation. *Id.*; *United States v. Anderson*, 741 F.3d 938, 954 (9th Cir. 2013). Although exact mathematical precision is unnecessary, "some precision" is required, and "[s]peculation and rough justice are not permitted."

1

*Anderson*, 741 F.3d at 954; *United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015). Restitution must also be directly and proximately caused by the offense, and any disputed loss amount must be resolved by the court based on reliable evidence. *United States v. Sawyer*, 825 F.3d 287, 297 (6th Cir. 2016).

Courts consistently require the government to prove restitution losses through reliable, verifiable evidence rather than conclusory assertions. In *United States v. Sawyer*, 825 F.3d 287 (6th Cir. 2016), the defendants' environmental violations caused the EPA to incur over $16 million in cleanup costs. The court affirmed a $10 million restitution order because the government proved its losses through detailed SCORPIOS cost reports and sworn testimony from an EPA coordinator, all of which bore "sufficient indicia of reliability." *Id.* at 295–97 (citing *United States v. Jackson-Randolph*, 282 F.3d 369, 386 (6th Cir. 2002)). That documentation met the evidentiary threshold under § 3664(e). Likewise, in *United States v. Gushlak*, 728 F.3d 184 (2d Cir. 2013), restitution was affirmed because the government presented an expert regression analysis and trading data that provided a reasonable approximation of investor losses. *Id.* at 195–96, 200–03. The Second Circuit emphasized that such restitution is proper only when the calculation is grounded in verifiable data. *Id.* at 196.

Here, the government has not met its burden under 18 U.S.C. § 3664(e) to prove M.D's alleged lost income by a preponderance of reliable evidence. The only support offered is an unsworn, two-sentence letter from M.D.'s employer stating that he earned $15.00 per hour and "typically worked full time (40 hours per week)." (R. 216: Sent. Memo, Ex. 27: Letter from M.A.). No pay stubs, tax filings, sworn affidavits, or expert analyses were produced to verify the length of his employment, the consistency of his hours, or what reasonable living expenses he may have incurred. The MVRA requires that restitution for lost income reflects a victim's actual, proven

2

loss, supported by verifiable evidence rather than conjecture and the government's submission fails that standard. The letter here is not only unsworn and uncorroborated, but by using the word "typically" it hedges on what M.D. actually made during a "typical" pay period. What does "typically" mean in this context? In the absence of a sworn statement or affidavit from his employer, accompanied by tax records and pay stubs, we just don't know.

The Tenth Circuit's decision in *United States v. Ferdman*, 779 F.3d 1129 (10th Cir. 2015), demonstrates why restitution is improper on these facts. In *Ferdman*, the defendant fraudulently obtained cell phones from Sprint stores using stolen corporate account information and resold them. *Id*. at 1131–32. To prove loss, the government submitted only an unsworn two-page letter from Sprint's regional manager listing the "retail unsubsidized price" of 86 phones and estimated investigative and shipping costs. *Id.* at 1134–36. Sprint provided no affidavits, receipts, or records showing that the theft caused it to lose retail sales or profits. *Id.* The Tenth Circuit vacated the $48,715.59 restitution order, holding that § 3664(e) requires proof of actual, provable loss, not speculative or estimated values, and that an unverified letter "unsupported by evidence" cannot satisfy that standard. *Id.* at 1137–40. The same problem exists here: the government relies solely on a brief, speculative, employer letter asserting a dollar amount without documentation or sworn proof of loss. As in *Ferdman*, such a conclusory submission fails to meet the government's evidentiary burden under § 3664(e).

The government's cited authorities do not compel a different result. (R. 216: Sent. Memo, PageID 2045, 2048, 2050). In *United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002), restitution was upheld because the record included extensive trial evidence, witness testimony, financial records, and bank statements that provided sufficient indicia of reliability. *Id.* at 386–87. In *United States v. Carmichael*, 676 F. App'x 402 (6th Cir. 2017), restitution was based on

3

summary charts and corroborating ledgers backed by witness testimony. *Id.* at 412–13. The government's reliance on *United States v. Messina*, 806 F.3d 55 (2d Cir. 2015), and *United States v. Saipov*, 2019 U.S. Dist. LEXIS 24318 (S.D.N.Y. Jan. 22, 2024), is likewise misplaced. In *Messina*, the Second Circuit affirmed restitution for future lost income only because the award was supported by tax records and documentary proof linking the victim's death to lost earnings. *Id.* at 67–70. In *Saipov*, the district court relied on sworn declarations and trial testimony detailing how the victim's physical injuries impaired her ability to work. *Id.* at 11–12.

While the Court in United *States v. Cienfuegos*, 462 F.3d 1160 (9th Cir. 2006), reversed a denial of restitution for future lost income, it stressed that such awards are proper only when supported by reliable and non-speculative evidence. *Id.* at 1164–69. The Ninth Circuit required concrete proof, such as earnings records, calculations based on employment history, and discount rates, to ensure accuracy under § 3664(e). It warned that restitution must rest on evidence capable of establishing actual loss by a preponderance of the evidence. Such evidence is missing here. The government's request for lost income is based entirely on an unverified letter which amounts to "speculation and rough justice," and cannot substitute for proof of actual loss. *See Ferdman*, 779 F.3d at 1137-40. The government has not met its burden on the requested restitution for lost income.

Even if the Court were inclined to award restitution, any amount should be confined to verifiable past income rather than speculative future projections. As *Cienfuegos* and *Ferdman* make clear, future-income restitution requires reliable, evidence-based estimation methods, such as tax records or expert analyses. Without corroborating payroll documentation or testimony establishing M.D.'s consistent work history, any attempt to calculate lifetime earnings, benefits, or discounted present value would amount to the same "rough justice" rejected in *Ferdman*.

Accordingly, because the government has failed to produce reliable, corroborated proof of actual loss as required by § 3664(e), the Court should deny restitution for lost income in full.

**2.  Alternatively, Any Loss should be Reduced to Account for M.D.'s Personal Consumption.**

Deductions for "living expenses" (i.e., consumption) and a present-value analysis of the future income are warranted. *United States v. Schenck*, 2023 U.S. Dist. LEXIS 68937, at 40 (E.D. La. Apr. 20, 2023). When calculating restitution for lost future income under the MVRA, a court must discount future earnings to present value and deduct the victim's personal consumption (living expenses) so that the award reflects the victim's *actual loss*, not gross earnings. *Id.* at 40–42. Restitution awards for lost future income must reflect actual, not gross, economic loss, and courts apply personal-consumption deductions to prevent windfalls.

In *United States v. Schenck*, No. 20-19, 2023 U.S. Dist. LEXIS 68937, at 40 (E.D. La. Apr. 20, 2023)*,* the court addressed the Government's $1,099,408.67 restitution request under the MVRA, including approximately $1 million in lost future income for a deceased victim, S.A., based on an estimated $40,000 annual salary over twenty-five years. *Id.* at 2-6, 39–41. Although the court found the Government met its burden to prove S.A.'s income and work-life expectancy by a preponderance of the evidence, it agreed with the defendant that restitution must reflect the victim's actual loss rather than gross projected earnings, requiring deductions for both "living expenses" [personal consumption] and present-value discounting. *Id.* at 40-41.

The court applied a 2% below-market discount rate and a 60% consumption offset, the court calculated the net lost-income award at $312,375.30, concluding that these adjustments were necessary to ensure restitution accurately reflected S.A.'s proven economic harm. *Id.* at 42-43; *see also United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006) (holding that restitution must

5

reflect actual, not gross loss); *United States v. Arthur*, 750 F. App'x 540, 543 (9th Cir. 2018) (holding that courts must consider a personal-consumption deduction when calculating future lost income); *United States v. Williams*, 946 F. Supp. 2d 112, 119 (D.D.C. 2013) (holding that deductions for personal consumption and discounting to present value are appropriate to ensure restitution reflects the victim's actual economic loss).

Similarly, in *United States v. Johnson*, 125 F.4th 1352 (10th Cir. 2025), the Tenth Circuit vacated a restitution order because the district court rejected a personal-consumption deduction on the mistaken belief that it must be offset by the victim's unpaid household contributions. *Id.* at 1358–59. The panel held that "income lost" under § 3663(b)(2)(C) means actual earnings because restitution is limited to proven financial loss. *Id.* The court explained that a personal-consumption deduction is required when it can be estimated because it prevents a windfall by excluding income the victim would have spent on themselves. *Id.* at 1359. The panel remanded that the district court determine whether a personal consumption offset applied and to correct its payment schedule under § 3664(f)(2). *Id.* at 1359–61. *Johnson* thus reaffirms that restitution must reflect actual, non-speculative income loss and include a reliable personal-consumption deduction to avoid overcompensation. *Id.* at 1358–59.

Here, deductions for personal consumption are warranted to ensure restitution reflects the victim's actual loss rather than gross projected earnings. And after deducting reasonable living expenses, there is no actual loss to the estate. Notably, M.D.'s income of $15/hr is below the living wage for the Cleveland area.[1] The typical expenses for a single adult with no children in the Cleveland area are as follows:

---

[1] https://livingwage.mit.edu/metros/17460 This website, from M.I.T., details its sources and methodology for calculating the living wage and the average expenses for basic needs. https://livingwage.mit.edu/pages/methodology. Ms. Perkins submits this data and methodology are

| | |
|---|---|
| Housing | $10,616/year or $885/mo.[2] |
| Utilities | $3,313.80/year or $276.15/mo.[3] |
| Food | $4,781/year or $398/mo.[4] |
| Medical | $3,510/year or $292.50/mo.[5] |
| Phone | $420/year or $35/mo.[6] |
| Transportation | $1,140/year or $95/mo.[7] |
| Other (cigarettes, clothing, hobbies, etc.) | $4,800/year or $400/mo.[8] |
| Total | $28,579.80/yar or $2,381.65/month |

---

reliable enough for the Court to use. If the Court believes additional testimony is necessary to establish its reliability, Ms. Perkins respectfully requests a hearing on the matter to provide her the opportunity to present additional evidence.

[2] https://livingwage.mit.edu/metros/17460. This average is lower than other sources, suggesting an average rent of $1,191/month (https://www.apartments.com/rent-market-trends/cleveland-oh/) and $1,213/month (https://www.zillow.com/rental-manager/market-trends/cleveland-oh/), and $1,286.25/month(https://www.bls.gov/regions/midwest/news-release/consumerexpenditures_cleveland.htm) Ms. Perkins uses the conservative estimate on rent.
[3] https://www.apartmentlist.com/renter-life/cost-of-living-in-cleveland
[4] https://livingwage.mit.edu/metros/17460; https://www.bls.gov/regions/midwest/news-release/consumerexpenditures_cleveland.htm ($4,091 alone spent on food at home, not counting $2,723 spend on food prepared away from home).
[5] https://livingwage.mit.edu/metros/17460
[6] https://www.t-mobile.com/dialed-in/wireless/average-phone-bill-per-month (average cell bill in 2025 is $141); https://livingwage.mit.edu/metros/17460 (average cell and internet cost is $121.75/month). Ms. Perkins notes discount cellular plans are available for around $35/month and uses that conservative estimate here.
[7] https://www.riderta.com/fares Monthly RTA fare. M.D. did not own a vehicle.
[8] https://livingwage.mit.edu/metros/17460 (uses $603/month for "other" and "civic" categories). Ms. Perkins uses a conservative $400/month for this miscellaneous expenses category.

7

A conservative estimate of M.D.'s monthly living expenses is $2,381.65/month or $28,578.80 a year. This is already over the $28,300 a year post-tax the government argues he earned. (R. 216: Sent. Memo, PageID 2049). The estate therefore does not have any actual loss. This is entirely consistent with the way he lived, too. In the discovery, the government produced evidence that M.D. was selling plasma to make ends meet. After deducting reasonable expenses from the estimated loss of income, there is no excess income to support an argument that the estate has suffered an actual loss.[9]

### 3. Conclusion

The government has not submitted sufficient evidence to meet its burden of establishing a loss amount to the estate for M.D.'s income. Even if this Court finds the unsworn letter by M.D.'s employer is somehow sufficient, it should reduce the loss amount with estimates of M.D.'s personal consumption to prevent the estate from receiving a windfall. When calculating lost future income, Courts use below-market discount rates and personal-consumption offsets to bring the award in line with the victim's net earnings as we saw in *Schenk* and *Johnson*. Taking reasonable personal consumption deductions into account, the estate has no actual loss amount. For these reasons, Ms. Perkins requests this Court reject the government's request for restitution for M.D.'s lost income.

Respectfully submitted,

/s/ Stephen C. Newman
STEPHEN C. NEWMAN
Federal Public Defender

---

[9] This is not meant to suggest that Ms. Perkins may not have some civil liability to M.D.'s estate. Ms. Perkins takes no position on that because it is not a question before this Court.

Ohio Bar: 0051928
/s/ CATHERINE ADINARO SHUSKY
CATHERINE ADINARO SHUSKY
Attorney at Law
Ohio Bar: 0088731
1660 West Second Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856 Fax: (216) 522-4321
/s/ Alvaro L. DeCola
ALVARO L. DeCOLA
Assistant Federal Public Defender
Ohio Bar: 0087656
50 S. Main Street, Ste. 700
Akron, OH 44308
Phone 330-375-5739 Fax: 330-375-5738
E-mail: stephen_newman@fd.org
E-mail: cathi_shusky@fd.org
E-mail: alvaro_decola@fd.org