IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21CR869 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| CHELSEA PERKINS, | ) | GOVERNMENT'S REPLY IN SUPPORT |
| | ) | OF RESTITUTION FOR LOST INCOME |
| Defendant. | ) | |

"To not award restitution for future lost income would lead to a perverse result where murderers would be liable for markedly less in restitution than criminals who merely assault and injure their victims." *United States v. Cienfuegos*, 462 F.3d 1160, 1164 (9th Cir. 2006). Defendant pleaded guilty to second-degree murder, yet now seeks to evade mandatory restitution for her victim's lost income. 18 U.S.C. § 3663A. Defendant's arguments fail and the Court should order restitution, as required by the Mandatory Victim Restitution Act, of $596,307.13.

## I. THE GOVERNMENT HAS MET ITS BURDEN TO DEMONSTRATE LOST FUTURE INCOME

There is no dispute that victim M.D. was employed at Graphix Junction when Defendant murdered him. There is also no dispute that M.D.'s employer informed the Court via letter that M.D. made $15 per hour and worked 40 hours per week (R. 216: Sentencing Memorandum, Ex. 27), or that co-workers verified his employment long before this case was even indicted (*see* March 10, 2021 Statement by A.M., attached hereto as Exhibit A). Based on this and, using conservative financial principles, the government calculated the projected lifetime earnings M.D. would have earned had Defendant not ended his life. This series of paychecks was reduced to a

net present value that discounts those future earnings to an amount today of $596,307.13.  This number is what the Court should order in restitution.

But instead of accepting this conservative calculation, Defendant contends that the Government fails to meet its burden to show "the proper amount" of lost future income that must be ordered.  18 U.S.C. § 3664(e).  Defendant is wrong.

By its nature, the "calculation of future lost income must be based upon certain economic assumptions."  *Cienfuegos*, 462 F.3d at 1169.  A "victim's losses need not 'be proven with exactitude'" so long as the calculation uses "reasonable actuarial assumptions supported by evidence" of the victim's capacity to work.  *United States v. Williams*, 946 F. Supp. 2d 112, 118 (D.D.C. May 24, 2013).  Here, the Government has presented exactly that—reasonable assumptions of projected future income, discounted to present value and for applicable tax payments, based upon the victim's work history and wage.  Importantly, the assumptions provide a basis to show M.D.'s *capacity* to work in the future.  Put differently, the Court's restitution order should reflect what M.D. could have earned had his life not been cut short by Defendant's choice to shoot him in the back of the head.  The assumptions and underlying information about his current work are aids for the Court in evaluating what M.D.'s capacity to work would have been.

There is no dispute that, as a direct result of Defendant's murder, M.D. will never work again.  There is also no dispute that victim M.D. had a job at the time of his death.  When Defendant picked him up from the Tiki Underground bar, M.D. had been associating with his coworkers.

The Government included, as Exhibit 27 to its sentencing memorandum (R. 216) a letter obtained from Defendant's employer, which provides his hours and hourly wage.  With no

2

dispute that M.D. did work and was working at the time of his death, this is sufficient to show M.D.'s earnings at the time of his murder, which provided the foundation for the Government's lost future income amount claim.  *See, e.g., United States v. Roach,* 2008 WL 163569, at \*3-5, 9 (W.D.N.C., Jan. 16, 2008) (restitution awarded for lost income based on reasonable assumptions that murder victim would work 40 hours per week for 50 weeks per year until age 65 at state minimum wage and receive two percent increase per year); *United States v. Poole*, 2012 U.S. Dist. LEXIS 147146 (E.D. La. Oct. 11, 2012) ("What is not speculative in this case is that the decedent was working at the time of his death.").

Defendant offers no evidence to the contrary.  Rather, Defendant tries to cast doubt on this foundation by arguing about the format of the Government's proof.  (R. 223: Opp'n, PageID 2280).  But her claim that the Court should reject it and consider only "corroborating payroll documentation or testimony" relies on misquoting M.D.'s employer's letter and a misunderstanding of the Government's burden.   The Graphix Junction letter did not claim M.D. "typically worked full time" as Defendant claimed, but instead said he worked "as a fulltime employee (40 hours a week) as screen reclaimer."  *Compare* (R. 223: Opp'n, PageID 2278) *with* (R. 216: Sentencing Memorandum, Ex. 27).  "Typically" was the Government's characterization of Defendant's work week toward explaining why it used fulltime employment in its calculation. By suggesting that a word choice by a government attorney calls into question the veracity of M.D.'s employer [and coworker], Defendant puts words into M.A.'s mouth that he never communicated.  Defendant also ignores the corroborating record evidence that M.D. worked. The witness statement from M.A. confirmed that, at the time of his death, M.D. was an employee at Graphix Junction. *See* March 10, 2021 statement by M.A., attached hereto as Exhibit B).  A co-worker and friend corroborated that in his statement in a separate interview the same day.  Ex.

A.  Undoubtedly the best source of testimony on M.D.'s work history would have been the

testimony of the victim himself, but Defendant has seen to it that he is unavailable.

There is a reason the law does not require production of "pay stubs, tax filings, sworn

affidavits, or expert analyses, but rather only demands the Government provide, by

preponderance of evidence, a showing of a murder victim's future earning potential.  By

definition, that estimate will be unproved.  But here, the Government has met its preponderance

standard by showing that M.D. had, at minimum, future earning potential as a full-time worker at

a $15/hr rate.  *See, e.g,*, *United States v. Serawop*, 505 F.3d 1112, 1122–1125 (10th Cir. 2007)

(affirming restitution order for lost income to estate of three-month old victim).  As the Court has

ordered a hearing on restitution, Defendant is free to present any evidence it has to the contrary.

II.  **DEFENDANT FAILS TO MEET HER BURDEN TO SHOW A PERSONAL CONSUMPTION OFFSET IS NECESSARY**

Defendant next advances the argument that the Court "must" apply a personal-

consumption deduction to reduce the restitution figure.  (R. 223: Opp'n, PageID 2280).

Defendant is wrong on all fronts: such a deduction is not mandatory, it does not apply in this

case, and even if it were, any appropriate amount would be far less.

As a threshold matter, it is permissible in certain situations for the Court to consider a

personal-consumption offset in a projected future income analysis.  But none of Defendant's

cited cases held that a Court "must" apply a personal-consumption offset in every case.  The

Tenth Circuit in *United States v. Johnson*, 125 F.4th 1352 (10th Cir. 2025) remanded for further

consideration of whether the requested personal-consumption deduction was warranted on the

facts and, if so, the applicable legal standard for applying such a deduction.  The Ninth Circuit in

*United States v. Arthur*, 750 F. App'x 540 (9th Cir. 2018) remanded to fix an arithmetic error

and to "consider *whether* a consumption offset is necessary concerning . . . projected lost

income" (emphasis added).  So too did the district courts in *United States v. Schenck*, 2023 U.S. Dist. LEXIS 68937 (E.D. La. Apr. 20, 2023) ("[T]he Court *elects* to employ 'well recognized industry standards and norms' for calculating lost future income by discounting . . . for personal consumption." (emphasis added)) and *United States v. Williams*, 946 F. Supp. 2d 112 (D.D.C. May 24, 2013) (noting that a "consumption deduction" is "permitted in criminal restitution").  So, although a personal consumption offset can be considered, it should not be part of the calculation unless and until Defendant shows that it is both correct and helpful to the Court.  Defendant fails to do so because it is not proper for determining the wages M.D. would have earned from working, had he not been prematurely killed.

    A.     DEFENDANT'S PROFFERED OFFSET WOULD EVISCERATE LOW-INCOME VICTIMS' RIGHTS

Defendant's requested offset here, which if accepted would amount to more than 100% of M.D.'s future earnings, is unsupportable.  *See* (R. 223: Opp'n, PageID 2281–83).  As shown below, Defendant is not even correct as to what the "living wage" was in 2021.  But even if Defendant were correct about the living wage, using that full figure as the offset amount would create absurd results, including a system where MVRA orders entitle victims only to "profit" (i.e. revenue after expenses) instead of lost earnings.  That is not what the MVRA requires.  *See* 18 U.S.C. § 3663A(a)(4) ("a court shall order the defendant to make restitution to [a victim] to reimburse that person's necessary and reasonable—**lost income** . . . ." (emphasis added).

As of the 2020 census, the median income for an individual living in Cleveland, Ohio was $30,907, and over 30% of the population was living below the poverty line.[1]  Nationally, a

---

[1] *See* https://www.census.gov/quickfacts/fact/table/clevelandcityohio, last accessed November 21, 2025.

substantial portion of the population earns less than a "living wage."[2]  Defendant's proposed

mandatory personal-consumption offset on these assumptions would mean that there would be

no "actual loss" of wages for murdering a large percentage of the workforce.  That is a ghoulish

result that finds no support in the MVRA.  18 U.S.C. § 3663(A) (requiring reimbursement for

victims' "lost income" and without reference to consumption offsets).  Nor does it find support

even in Defendant's own cases.  *E.g., United States v. Williams*, 946 F. Supp. 2d at 118

(applying a 33% personal-consumption offset to income of $30,000/year).  But even if personal-

consumption is proper in some cases, it is not proper here.  Defendant shot M.D. in the back of

the head in a park.  She did so because she believed he raped her years earlier, and she wanted

revenge.  She should not now be able to avoid paying into his estate—which one day will belong

to his minor children—by claiming that he did not make any money despite having a full-time

job and being capable of work.  To order otherwise would be to give Defendant a windfall

despite her crime.

In short, nothing in law or equity supports Defendant's apparent belief that an "actual

loss" only results when you murder a rich enough victim.  The Court should decline Defendant's

invitation to so hold.

B.　　DEFENDANT'S PROFFERED OFFSET ANALYSIS IS FATALLY FLAWED

The Tenth Circuit has stated that a personal-consumption offset "might be appropriate if

the amount is undisputed, easily determined, or nonspeculative."  *Johnson*, 125 F.4th at 1358.

---

[2] *See, e.g.*, Oxfam report: Low-wage workers still make up 23% of U.S. workers (nearly 40 million workers earning less than $17/hr, an amount that would not constitute a "living wage" in any state); Nearly Half of Full-Time Workers Aren't Making a Living Wage (finding, based on MIT Living Wage Calculator, that approximately 44% of the workforce earns less than the MIT Living Wage figure).

And a court must consider whether the personal-consumption offset is necessary to avoid a "windfall" to the victim.  *Id.* at 1359.  Defendant's proffered offset meets none of these criteria and should be rejected.

There is no windfall to the victim's estate here because the Government already discounted the lost future income projections in a conservative matter for the same purpose.  The Government assumed that M.D.'s wages would hold at the equivalent of $15/hr; assumed 50 work weeks a year rather than 52; applied no pre-judgment interest for income lost between his murder and sentencing; deducted state and federal taxes from the figures; discounted future years' lost earnings at a rate equivalent to the 20-year treasury yield; and assumed three fewer working years than would be typically expected for a man of M.D.'s age and background.  *See* Memo at 23-25.  Each of these reasonable assumptions has the effect of lowering the projected value of M.D.'s future lifetime earnings.[3]

Defendant's request to also add a personal-consumption offset here would not avoid a windfall to M.D.'s estate; it would result in a windfall to Defendant.

Even if the Court were to find that some consumption offset is necessary, Defendant has not offered a proper calculation of such an offset.  Defendant misunderstands the nature of a proper personal-consumption offset.  That offset is not intended to account for every purchase that an individual might make; rather it is an offset for necessary living expenses.  After all, the MVRA does not require "lost profits" or "lost savings after the monthly bills."  But Defendant then adds on $4,800 annually in "other" expenses to catch items including "hobbies." (R. 223:

---

[3] As Defendant's Opposition concedes, M.D. also earned occasional income from selling plasma. *See* (R. 223: Opp'n, PageID 2273).  The Government did not incorporate any secondary or alternate income streams into its projected calculation, which would have raised M.D.'s total lifetime earnings and therefore the restitution request.

7

Opp'n, PageID 2282 (n.8) (combining "other" and "civic engagement" categories).[4]  Although some portion of that amount would catch miscellaneous necessities, spending on "hobbies"— or other items like "reading, fees and admissions, pets, toys . . . playground equipment" included in the Living Wage calculations[5]—are the precisely the sort of expense that victims lose when their wages are taken from them by crime.  *See, e.g,*, *Williams*, 946 F. Supp. 2d at 118 (33% deduction allowable for "consumption needs").  Defendant's claimed deduction of those items turns the MVRA's guarantee of lost wages on its head and expands the limited nature of an offset that is designed only to items necessary to survive.

The technical aspects of Defendant's proposed offset calculations are also based on faulty premises.  Defendant's proposed offset is largely based on MIT's "Living Wage" calculator.  (R. 223: Opp'n, PageID 2281–83).  But this approach relies on current year data to compare to M.D.'s wages from 2021, which is what the Government's projections were based on.  In June 2021, that same Living Wage calculator showed that a living wage for a single adult living in the Cleveland-Elyria area—the same assumptions Defendant uses—was $13.30 an hour.[6]  So at the time of his death, Defendant was earning *more* than a living wage.  The Government's conservative approach to projected future income assumed that M.D.'s wages would only keep pace with inflation (rather than increase over time), which would mean that his wages would likewise keep pace above the same living wage that Defendant so heavily relies on.

---

[4] *See* Living Wage Calculator (definitions of "Other necessities" and "Civic engagement").

[5] *See* Living Wage Calculator (definition of "Civic engagement").

[6] *See* Living Wage Calculator - Living Wage Calculation for Cleveland-Elyria, OH (accessible through the Internet Archive Wayback Machine; website "captured" as of June 20, 2021).

Defendant's temporal error is not the only analytical flaw.  Defendant also relies on misunderstandings of the nature of the MIT Living Wage calculator.  Defendant highlights her purported "conservative" estimate of housing expenses because it is below the "average" apartment listing per Zillow and Apartments.com.  (R. 223: Opp'n, PageID 2282 (n.3)).  But Defendant then goes on to add a separate expense for "utilities" in the amount of $3,313.80/year, despite the fact that utilities are already included in the MIT Living Wage calculator's definition of "Housing" expenses.[7]  This is a double counting of the same expense, and it serves to highlight the grim reality of Defendant's opposition to the Government's restitution request. Rather than seek to find a reasonable offset based in reality, Defendant attempts to eradicate all of M.D.'s lost income by listing as many expenses as possible, even counting some twice.  This flies in the spirit and letter of the law in the MVRA.

---

[7] Living Wage Calculator (defining "Housing" as "estimates of the 40th percentile gross rents – which include the cost of shelter, contract rent, *and utilities* sans telephone, cable, and broadband – for standard quality units").

Because she failed to offer a direct comparison, double-counted expenses, and misunderstood the nature and purpose of a personal-consumption offset, Defendant's proffered deduction is not legally or mathematically sound.  The Court should decline to follow it.  *E.g., United States v. Serawop*, 505 F.3d at 1128 (affirming district court's decision to reject proffered offset).

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By:   /s/ Adam Joines
      Adam Joines (OH: 0094021)
      Assistant United States Attorney
      United States Court House
      801 West Superior Avenue, Suite 400
      Cleveland, OH 44113
      (216) 622-3929
      (216) 522-8355 (facsimile)
      Adam.Joines@usdoj.gov